JOHNSON, Judge pro tern.
The plaintiff, Vernon E. Hansel, filed this suit against Herbert J. DeSalle to recover $694.01, which plaintiff alleged was due under two written contracts entered into between himself and the defendant. One contract obligates defendant to pay plaintiff $529.01 to reimburse plaintiff for the amount of a street paving assessment against a house and lot sold by plaintiff to defendant and the other represents the price of furniture sold to defendant for $160, subject to credits totalling $95 paid without designation. There was judgment for plaintiff as prayed for. Defendant has appealed.
This litigation arose out of the following circumstances. Defendant is a veteran and wanted to buy the house and lot with a Veterans Administration secured loan. He called on the VA for an appraisal of plaintiff’s house and lot. When the ex parte certificate of reasonable value was issued on November 2, 1954, by the administrator of VA appraising the property at $13,375, *869 there was no paving on the street. That certificate at line 9a shows “Street Improvements — None, * * * ” and at line 9c it said that the value was “Based upon observation of the property in its ‘as is’ condition.” On November 6, 1954, defendant made a written offer to purchase the house and lot for the consideration of $13,375. The plaintiff accepted the offer. This offer and acceptance resulted in a contract to sell and set out the relationship of the parties at that time. That contract on line 18 provides that: “Paving charges bearing against the property, if any, to be paid by vendor.” On November 19 plaintiff paid and had canceled a paving lien recorded against the property in the sum of $691.01 though the paving had not been installed. Nine days later the defendant gave to plaintiff his written obligation (P-1) to reimburse the vendor for the cost of the paving “ * * * if we are successful in buying your house. Terms to be arranged at time of act of sale of the house to us.” This agreement changed the above mentioned contract of November 6. On December 18, 1954, the plaintiff vacated the property and on that same day the defendant gave plaintiff in writing his agreement (P-2) to pay the plaintiff $160 “ * * * for furniture received if and when we are successful in purchasing the house at #18 Sherling Drive, Jefferson Parish, La.” When the deed conveying the real estate to defendant was executed on January 15, 1955, the plaintiff was out of the state and the deed was signed for plaintiff by an agent. Mrs. Hansel said they showed the note for the paving cost to the agent, but the deed was silent as to the paving. No terms for the payment of the amount were then agreed upon and the contingency on which the obligations to pay for the paving cost and the furniture having been fulfilled, the whole amounts then became due.
Counsel for defendant contends that because the contract to sell the real estate was made contingent on defendant being able to obtain a loan approved by VA, all incidental contracts and amounts are controlled by the provisions of the Servicemen’s Readjustment Act of 1944. The pertinent part of that act, cited at Title 38, sec. 694a(a) (3), U.S.C.A., says:
“That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator.”
We think the only property the price of which the VA has the right and interest to control is that property on which the purchaser will execute a mortgage to secure a loan, the amount of which loan must be approved by the VA. It would be an unreasonable law if it provided that the VA must appraise and approve the value of other benefits and assets which the veteran might want to acquire. If the law required the VA to make appraisement of paving which the veteran may want to install on his driveway, the sidewalk or the street on which the lot abuts to enhance the value of the lot, or of the furniture with which to furnish the home, then it was defendant’s duty to have called for such appraisals before he decided it would be good deals for him to acquire such benefit and property. It was not the duty of the plaintiff. Defendant’s failure to do so in this instance does not vitiate his obligations to pay this plaintiff for the benefit and assets which may have been incidental to the sale of the real estate through VA procedure, but which assets do not form any part of the property appraised by the VA administrator and covered by the veteran’s mortgage.
The evidence indicates that the plaintiff would not have signed the acceptance of defendant’s offer on November 6, 1954, if plaintiff had not known then that defendant would pay for the paving assessment, though defendant did not give plaintiff his written obligation to pay the amount until November 18, 1954. Counsel argues further that these incidental agreements, both as to the paving cost and the sale of *870 the furniture, are sinister and surreptitious and entered into to circumvent the federal regulation against price inflation, as evidenced by the fact that the agreements were not made conditions of the authentic deed conveying the real estate and by the further fact that the parties contemplated that if the VA had known about them the VA would not have given its approval or security for the loan. Therefore, counsel concludes that the agreements were abrogated by the deed’s silence in regard to them, and, in the alternative, that they were null ab initio as being contra bonos mores under the provisions of Article 1892 of the Civil Code, LSA. That argument and conclusion are not supported by the evidence or the law. Plaintiff testified that he had nothing to do with the VA appraisement and that if the VA did not want him to get reimbursement of the paving cost the appraiser should have marked it “paved”. Neither did he know that the VA would not approve the loan if he did. When defendant was asked by his counsel as to why he signed the agreement to pay for the paving, he answered that the VA “ * * * would not approve the loan if the asking price was higher than what they appraised the house for * * * There is no evidence that the VA was ever consulted about including the street paving in the price. From the evidence, it is fair to assume that the VA was not informed that defendant agreed to pay the amount of paving cost, though the VA did not intervene and nobody from the VA was called to testify. The VA was approving and securing a 100% loan, and it is entirely possible that the VA may have upped the price that much because there can be no question that the value of the property with the paving was increased by the full amount of the paving cost over its worth without paving. Moreover, there is no evidence that the VA would not have done that, and defendant was simply mistaken in his belief that the VA would have disapproved these transactions. Indeed, the VA would have had no legal reason to disapprove them.
One further contention of the defense is that plaintiff should not collect for the paving cost because defendant received no title to any additional improvements, and that the public roadway or the paving on it is not susceptible to private ownership. Certainly plaintiff could not convey title to the street or the paving on it. Defendant did receive real value. Fee title is not the criterion by which the issue here is tried and correct judgment formed respecting it.
The trial judge said in his comments, that: “There is no question in the Court’s mind but that this certificate of reasonable value did not contemplate that the paving formed any basis to establish the reasonable value of the property, and hence it is an extra item and comes within the rule as set forth in the case of Voorhies v. Hance, La.App., 79 So.2d 615 * * *”
In the cited case a VA appraisal placed a value of $6,900 on„property to be sold to the veteran. The recited sale price was $6,545. In addition, vendor and vendee entered into a side contract privately for the sale to the veteran of a water system which was located on the property at the price of $1,500. The veteran attempted to avoid that contractual obligation to purchase the water system. However, the appraisal made by the VA did not include the water system and the court upheld the side agreement because the veteran did receive additional value in return for the additional consideration.
In the Voorhies case, supra, the decision at page 619 says:
“ * * * The Congressional Act only prohibits the exacting of consideration in addition to the reasonable value as fixed by VA appraisal, and the additional property sold or furnished was from the record worth the additional consideration, and not inflated in value to evade the regulation in question.
“It is argued that in view of the language of the sale of the property *871 from appellee to appellant that the well was included, and therefore it could not be sold again under the second agreement above, supra. This is true, but appellant loses sight of the fact that he only paid once for the well, pump, tank and pipe located on the property (It had been pointed out earlier in the decision that the well was not appraised in the VA certificate of value), and the mere fact that it was transferred twice is immaterial * * * ”
In the instant case the agreement to purchase furniture is valid for the same reason that the contract to pay for the paving is valid. There is no evidence that the furniture was not sufficient consideration for defendant’s obligation to pay $160 for it and defendant’s allegation in his answer that it was only worth $35 is not proven. That the price of the furniture should be $35 was a special defense which placed the burden to prove it on the party alleging it.
To support his position, counsel for defendant cites the only cases in Louisiana on the subject: Diamond v. Willett, La.App., 37 So.2d 338; Voorhies v. Hance, supra, and Bamber v. Mayeux, 232 La. 42, 93 So.2d 687. We have discussed above the Voorhies case, which is inapposite to the defense. The Diamond case is clearly distinguishable because the disallowed additional indebtedness to purchase the real estate exceeded the reasonable value fixed by the VA appraisement. Here the VA appraisement specifically did not consider the value of the real estate with the street paved. In the Diamond case, briefly, the VA assigned a value of $6,000 for the property which the veteran wanted to buy. The owner wanted $7,000; so, the veteran gave him a promissory note for $1,000 and borrowed the $6,000 through the federal government agency. The court held that the $1,000 note was unenforceable since that contract was an attempt to circumvent the federal regulation.
The Bamber case involved the same principle as found in the Diamond case with a slightly different factual situation.
For these reasons, the judgment is affirmed.
Affirmed.